# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:24-mj-01241-DUTY-1 | Date | March 11, 2024 |
| Title | United States of America v. Yong Jiang | | |

| | |
|---|---|
| Present: | Hon. A. Joel Richlin, U.S. Magistrate Judge |
| James Munoz | CS 03/06/2024 & CS 03/11/2024 |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Government: | Attorneys Present for Defendant: |
| James C. Hughes (3/6/24)<br>Richard Robinson (3/11/24) | Gabriela Rivera (3/6/24)<br>Reed Rowe (3/11/24)<br>Darren Cornforth (3/11/24) |

**Proceedings:** ORDER GRANTING DETENTION MOTION (DKT. 6)

## Introduction

On March 11, 2024, the Court held a continued detention hearing for Defendant Yong Jiang ("Defendant"). After considering the arguments of counsel, the Court advised the parties of its intent to grant the Government's motion for detention. The Court further advised that it would issue a written opinion memorializing its findings and conclusions. For the reasons set forth below, the Court GRANTS the Government's motion for detention based on a serious risk of nonappearance.

## Factual Background & Procedural History

On March 6, 2024, Defendant appeared before this Court for his initial appearance. (Dkt. 7.) The Government sought detention based on a serious risk that Defendant would flee. (Dkt. 6.) In support of the Government's detention motion, the Government proffered the Complaint, the affidavit supporting the Complaint, the Pretrial Services Report, and the recommendation of detention contained in the Pretrial Services Report.

The Pretrial Services Report recommended detention based on concerns for nonappearance. The Report summarized as key facts that Defendant is a 50-year-old citizen of China who has an unverified background, no bail resources, a valid passport, and a history of international travel. The Report also raised concerns that Defendant's financial information is unknown. The Report concluded that despite ties to the Central District of California and to the community, Pretrial Services did not believe that there was any condition or combination of conditions that could mitigate concerns for nonappearance. With regard to danger, Pretrial Services concluded that although the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:24-mj-01241-DUTY-1 | Date | March 11, 2024 |
|---|---|---|---|
| Title | United States of America v. Yong Jiang | | |

instant allegations were concerning, Pretrial Services believed that in light of Defendant's lack of criminal history, there were conditions or a combination of conditions that could mitigate concerns for danger.

Defense counsel requested release on bond and proffered a secured surety based on the home Defendant owns in Encino, California. Defense counsel emphasized that Defendant is in the United States lawfully pursuant to a B-1 visa, which necessarily means the U.S. Government conducted a review of Defendant's background before granting this discretionary visa.[1] Defense counsel advised that Defendant is willing to surrender his Chinese passport. Defense counsel stated that Defendant lives in the home in Encino with his wife, who is in the process of obtaining a Green Card. Defense counsel advised that Defendant's wife lives in the United States full time, as does Defendant's son, who is enrolled in college in northern California. Defense counsel noted that Defendant has a California driver's license, which is evidence of his ties to the Central District and that Defendant was planning to stay in the United States. Defense counsel stated that Defendant has been coming to the United States on business for years. Defendant is required to return to China every six months. Defendant's wife has been living in the United States since 2021 and his son came to the United States in 2019 for high school. Defendant purchased a rental property in Panorama City about two years ago. Defendant most recently entered the United States on January 26, 2024, and he did not have plans to return to China.

In response to the proffer and argument of defense counsel, the Government emphasized the facts alleged in the Complaint and supported by the accompanying affidavit. Specifically, the Government noted that Defendant is the owner and operator of a Chinese logistics business named Quickfish Intelligent Technology Limited

---

[1] According to the U.S. Citizenship and Immigration Services, a B-1 visa is a temporary business visitor visa that permits business activities of a commercial or professional nature in the United States. See https://www.uscis.gov/working-in-the-united-states/temporary-visitors-for-business/b-1-temporary-business-visitor (last visited 3/8/24). To be eligible for a B-1 visa, the purpose of the trip to enter the United States must be for business, the applicant must plan to remain for a specific limited period of time, the applicant must have sufficient funds to cover the expenses of the trip, the applicant must have a residence outside the United States that they have no intention of abandoning, as well as other binding ties that will ensure the applicant returns abroad at the end of the visit, and the applicant must be otherwise admissible to the United States. See id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:24-mj-01241-DUTY-1 | Date | March 11, 2024 |
|---|---|---|---|
| Title | United States of America v. Yong Jiang | | |

("Quickfish"). According to the affidavit, Quickfish used international wire transfers of funds from China to the United States to purchase millions of dollars of known counterfeit postage. The counterfeit postage was then used to ship packages on behalf of Defendant's China-based customers to addresses in the United States. The affidavit specifically describes bank account records showing that between January 2020 and May 2023, Quickfish's bank account at HSBC in Hong Kong wired more than $34 million to a bank account in the United States for the purchase of counterfeit postage. These bank account records include the wire transfer of $99,975 on May 12, 2022, which is alleged in the Complaint. The Government noted that the reason for Defendant's business travel within the United States was his work for Quickfish and that based on the fact that the counterfeit postage was sold at a discount off of the actual cost, the Government believes there are loss amounts to the U.S. Postal Service in excess of $34 million. Based on Defendant's status as a foreign national and unknown financial assets outside the United States which are likely substantial given the size of the wire transfers in this case, the Government does not believe that any set of bond conditions, including any bond secured by real property, would reasonably secure Defendant's appearance. The Government specifically rejected the possibility that GPS monitoring and restrictions on travel could reasonably assure Defendant's appearance in light of potentially significant financial resources outside of the United States and the prospect of a significant sentence in this case based on the loss amount.

The Court then requested input from Pretrial Services and inquired whether GPS monitoring and restrictions on travel could be sufficient when combined with a secured bond package. The representative from Pretrial Services attending the hearing responded that he agreed with the Government's argument that there was no dollar amount which could reasonably ensure compliance by Defendant in light of his potentially large financial resources outside of the United States and Defendant's ability to avoid the consequences of noncompliance by fleeing the United States. The representative from Pretrial Services advised that Pretrial Services does not view Defendant's ties to the Central District as significant or sufficient to incentivize compliance.

Defense counsel responded that the charges in the Complaint are business fraud, which are charges particularly amenable to supervision. Defense counsel further argued that Defendant can provide a significant bond package and there is no reason to think that he would risk losing the home where his wife lives or risk his son's future ability to attend school in the United States.

Following the arguments of counsel, the Court expressed a desire for additional

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES - GENERAL

| Case No. | 2:24-mj-01241-DUTY-1 | Date | March 11, 2024 |
|---|---|---|---|
| Title | United States of America v. Yong Jiang | | |

time to review the facts, including the lengthy affidavit supporting the Complaint, and to research additional prior detention rulings which might be analogous to the facts and charges here. Thus, the Government requested a brief continuance of the detention hearing for three court days. The Court granted the request and continued the hearing until Monday, March 11, 2024. The Court noted that this brief continuance would also allow the parties to submit additional information if they wanted to do so.

On March 11, 2024, the Court held a continued detention hearing. At the continued hearing, Defendant substituted in new counsel. New defense counsel arranged for Pretrial Services to speak with Defendant's wife. According to Pretrial Services, Defendant's wife was able to verify some of Defendant's background information as well as the security being offered for a potential bond. According to Defendant's wife, Defendant owns the house in Panorama City outright and the home is valued at $900,000. The home in Encino is mortgaged in the name of Defendant's wife with $1.5 million owed and a total value of $3 million. Defense counsel clarified that Defendant was willing to offer both homes as security for a bond. However, this did not change the recommendation of Pretrial Services in favor of detention due to a serious risk of nonappearance. The Government similarly continued to argue in favor of detention based on the view that the value of the homes is insignificant in comparison to the tens of millions of dollars that Defendant has access to outside of the United States. The Government provided the Court and defense counsel with a spreadsheet showing the more than $34 million in wire transfers from the business account of Defendant's company for the purchase of counterfeit postage. Based on Defendant's unknown financial resources, strong ties outside of the United States, and access to vast wealth outside the United States, the Government continued to seek detention based on a serious risk of nonappearance. Defense counsel argued in favor of a bond with electronic monitoring and the houses as security.

After considering the arguments of counsel, the Court advised the parties that it would grant the Government's motion for detention and would issue a written opinion to memorialize its reasoning.

### Legal Standard

This Court's consideration of the Government's motion for detention is governed by the Bail Reform Act. See 18 U.S.C. § 3142. The Bail Reform Act mandates the release of a person pending trial unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES - GENERAL

| Case No. | 2:24-mj-01241-DUTY-1 | Date | March 11, 2024 |
|---|---|---|---|
| Title | United States of America v. Yong Jiang | | |

other person and the community." Id. § 3142(e). The Government bears the burden of proving that Defendant poses a risk of nonappearance by "a preponderance of the evidence." United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986). However, the Government bears the burden of proving that Defendant poses a risk of danger to the community by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B).

Ultimately, the Bail Reform Act identifies four factors which must be balanced to determine whether the pretrial detention standard is met: (1) the nature and circumstances of the offenses charged, including whether the offenses involves a controlled substance; (2) the weight of the evidence against Defendant; (3) the history and characteristics of Defendant, including Defendant's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. See id. § 3142(g).

### Analysis

With the foregoing legal principles in mind, the Court considers the four statutory factors identified in 18 U.S.C. § 3142(g) and concludes that the balance of factors weighs against release.

### (1) Nature and Circumstances of the Offenses Charged.

With regard to the first factor, the Court concludes that the nature and circumstances of the offense charged create a serious risk of nonappearance. Defendant is charged with one count of money laundering with the intent to promote the use of counterfeit postage meter stamps in violation of 18 U.S.C. § 1956(a)(2)(A), 2(a). The Complaint specifically alleges one wire transfer of $99,975 on May 12, 2022, but the supporting affidavit contains a detailed description of many more wire transfers. Specifically, the affidavit describes bank account records showing that between January 2020 and May 2023, Quickfish's bank account at HSBC in Hong Kong wired more than $34 million to a bank account in the United States for the purchase of counterfeit postage. The affidavit explains that Quickfish purchased millions of dollars of known counterfeit postage and used the postage to ship packages on behalf of its China-based customers to addresses in the United States. Defendant is the owner and operator of Quickfish. Because the counterfeit postage was sold at a discount off of the actual cost, the Government believes there are loss amounts to the U.S. Postal Service in excess of $34

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:24-mj-01241-DUTY-1 | Date | March 11, 2024 |
|---|---|---|---|
| Title | United States of America v. Yong Jiang | | |

million. Based on the very large loss amount, Defendant is facing significant prison time. The prospect of significant prison time creates a serious risk of non-appearance. See, e.g., United States v. Ruiz-Corral, 338 F. Supp. 2d 1195, 1198 (D. Colo. 2004) ("[T]his Court believes that the potential length of incarceration that defendant is facing, possibly upwards of twenty years and more, is a strong incentive for defendant to flee to Mexico if he were released on bond.").

### (2) Weight of the Evidence.

With regard to the second factor, the Court acknowledges that the weight of the evidence "is the least important of the various factors," but the Court considers the weight of the evidence in terms of the likelihood that Defendant will flee or pose a danger to the community. United States v. Hir, 517 F.3d 1081, 1090 (9th Cir. 2008) (internal quotation marks omitted). Here, Pretrial Services believes there are conditions that could mitigate concerns for danger and the Government appears to agree, focusing its arguments on the risk of nonappearance. The Court also believes there are conditions that could mitigate the risk of danger, as will be explained below. Accordingly, the Court will focus on the weight of the evidence in terms of the likelihood that Defendant will flee.

The Court concludes that the weight of the evidence described in the affidavit is very strong and therefore increases the risk of nonappearance if Defendant were released on bond. For example, the Government has secured the cooperation of Lijuan Chen ("Chen") in their investigation of Defendant. Chen has been separately indicted and is currently engaged in ongoing plea negotiations with the Government. Chen was involved in selling the counterfeit postage to Defendant. Chen has advised the Government that from 2020 through 2023, Defendant was one of the major purchasers of counterfeit postage. Chen has provided screenshots of Defendant's communications on the WeChat text messaging application showing Defendant's involvement in the scheme since as early as 2019. The Government also has bank account records from Quickfish's Hong Kong account with HSBC. The bank records document the wire transfer alleged in the Complaint as well as the more than $34 million in funds wired to the United States for the purchase of counterfeit postage. The bank records also show that Defendant wired funds from the Quickfish bank account to purchase his rental property in Panorama City. The fact that the Government has very strong evidence to support the charges against Defendant increases the risk of nonappearance because Defendant is facing significant prison time if convicted.

By contrast, the evidence described in the affidavit decreases the risk of danger

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES - GENERAL

| Case No. | 2:24-mj-01241-DUTY-1 | Date | March 11, 2024 |
|---|---|---|---|
| Title | United States of America v. Yong Jiang | | |

posed by Defendant's release because the Government has apparently interrupted the counterfeit postage conspiracy by arresting one of the two leaders (Chen) and indicting Chen's business partner (Chuanhua Hu) who remains at large in China. Thus, it does not appear that Defendant could continue purchasing counterfeit postage upon release even if he wanted to do so.

### (3)  History and Characteristics of Defendant.

With regard to the third factor, Defendant's history and characteristics contain strong facts that both increase and mitigate the risk of nonappearance. Ultimately, however, this factor weighs against release for the reasons set forth below.

Defendant is a Chinese national who has been visiting the United States on business for several years pursuant to a B-1 visa. As noted by defense counsel, the fact that Defendant was granted a discretionary B-1 visa indicates that he passed the application and vetting process required to obtain a B-1 visa. Defendant has no criminal history and has been developing ties to the United States and the Central District of California over the past few years. Specifically, Defendant purchased a rental property in Panorama City about two years ago and purchased a home where his wife resides full time about one year ago. Additionally, Defendant's son came to the United States in 2019 to attend high school and now attends college in northern California. Defendant's wife is in the process of obtaining a Green Card and Defendant has a California driver's license.

According to defense counsel, Defendant did not have any plans to return to China when he entered the United States most recently in January of this year. However, the Court notes that Defendant's B-1 visa requires that he have no intention of remaining in the United States and that he maintain a residence outside the United States, as well as other binding ties outside the United States to ensure that he returns to his home country at the end of his temporary visit. See https://www.uscis.gov/working-in-the-united-states/temporary-visitors-for-business/b-1-temporary-business-visitor (last visited 3/8/24). Thus, the fact that Defendant has a B-1 visa necessarily means that he did not intend to remain in the United States and undermines the facts establishing more permanent ties with the United States in the past few years. The Court also notes that Pretrial Services does not view Defendant's ties to the Central District as significant or sufficient to incentivize compliance with conditions of release.

With regard to Defendant's Chinese citizenship, the Ninth Circuit has advised that "[a]lienage may be taken into account, but it is not dispositive." United States v. Santos-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:24-mj-01241-DUTY-1 | Date | March 11, 2024 |
|---|---|---|---|
| Title | United States of America v. Yong Jiang | | |

Flores, 794 F.3d 1088, 1090 (9th Cir. 2015). Specifically, the Ninth Circuit has held that immigration status is not a categorical exclusion under the Bail Reform Act, but can be considered as one of several factors in an individualized analysis to determine risk of nonappearance. See id. at 1090-92. Therefore, the Court will consider Defendant's Chinese citizenship (and strong ties to China) as merely one factor in the overall assessment of whether conditions of release could reasonably assure Defendant's appearance at future court proceedings.

With regard to Defendant's financial resources, the evidence demonstrates that Defendant likely has access to vast financial resources outside of the United States. Indeed, the affidavit supporting the Complaint describes bank records in the possession of the Government from Quickfish's bank account in Hong Kong showing that more than $34 million was wired from Quickfish's bank account to the United States for the purchase of counterfeit postage over the course of approximately three years. The bank records also show that funds wired from Quickfish's account purchased Defendant's rental property in Panorama City. The fact that Defendant's financial resources are unknown and that Defendant appears to have access to vast wealth outside of the United States are perhaps the most significant facts weighing against release. The problem is that this prevents the Court from setting any bond amount which could reasonably assure the Defendant's appearance. See, e.g., United States v. Geerts, 629 F. Supp. 830, 832 (E.D. Pa. 1985) ("However, because the source of defendant's bond money and the amount of defendant's net worth are presently unknown, I am unable to conclude that a bond could reasonably assure defendant's appearance."). Indeed, this is precisely the concern expressed by Pretrial Services at the hearing. Moreover, the only assets Defendant has in the United States to offer as bond are his two houses. But the two homes in the United States do not provide sufficient incentive to comply with conditions of release when weighed against a significant potential sentence and the fact that Defendant has vast resources outside of the United States. See, e.g., Ruiz-Corral, 338 F. Supp. 2d at 1198 ("[T]his Court believes that not even posting the home as security for the bond would adequately ensure defendant's appearances in this case, given the severe potential sentence(s) facing defendant.").

Accordingly, the Court concludes that Defendant's history and characteristics ultimately weight against release. See, e.g., United States v. Bikundi, 47 F. Supp. 3d 131, 137 (D.D.C. 2014) ("The Court finds that the defendant has continuing significant foreign ties to her country of origin, including potential access to funds located in Cameroon, and that this raises a significant concern about her serious risk of flight.").

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

| Case No. | 2:24-mj-01241-DUTY-1 | Date | March 11, 2024 |
|---|---|---|---|
| Title | United States of America v. Yong Jiang | | |

### (4) Nature and Seriousness of the Danger to the Community.

With regard to the fourth factor, the nature and seriousness of the danger to the community posed by Defendant's release, this does not appear to be the basis of the Government's motion and therefore "this factor has minimal relevance in this case." See id. Indeed, Pretrial Services believes that the risk of danger to the community can be mitigated and the Court agrees. As set forth above, the Government appears to have interrupted the counterfeit postage scheme such that Defendant would be unable to continue buying counterfeit postage even if he wanted to do so. There is no allegation that Defendant has engaged in violence or otherwise poses any risk of physical danger to the community. Accordingly, this factor simply is not relevant to the question of whether Defendant poses a risk of nonappearance.

### Conclusion

Based on the above, the Court concludes that the Government has met its burden to prove by a preponderance of the evidence that no condition or combination of conditions could reasonably assure Defendant's future appearance at court proceedings. See, e.g., United States v. Stanford, 630 F. Supp. 2d 751, 756 (S.D. Tex. 2009) ("Taken together, Stanford's longstanding ties to a country other than the United States—Antigua and Barbuda, his primary residence for the past fifteen years, his access to an international network and financial resources, his familiarity with global travel, and the severity of the punishment he may be subjected to if convicted of the charges alleged in the indictment against him compel the Court's determination that Stanford poses a significant risk to flee the Court's jurisdiction prior to trial."), aff'd, 341 F. App'x 979 (5th Cir. 2009). As set forth above, the Court is particularly concerned that it is not possible to set bond conditions that would reasonably assure Defendant's appearance based on Defendant's unknown financial resources and apparent access to vast wealth outside of the United States. The Court gives serious consideration to the concerns expressed by Pretrial Services on this issue. As the agency that would be responsible for supervising Defendant on release, the Court finds it significant that Pretrial Services does not believe it could adequately supervise Defendant if released.

For the foregoing reasons, the Government's motion for detention is GRANTED. IT IS SO ORDERED.